1  ROBERT L. BRACE (CA Bar No.122240)
   MICHAEL P. DENVER (CA Bar No. 199279)
2  HOLLISTER & BRACE
   A Professional Corporation
3  1126 Santa Barbara  Street
   Post Office Box 630
4  Santa Barbara, CA    93102
   Telephone: (805) 963-6711
5  Facsimile:   (805) 965-0329
6  Attorneys for Thomas A. Dillon, Independent
   Fiduciary of Employers Mutual, LLC and the Employers
7  Mutual Plans, and the Class Representative of the Class of Individuals
   E-Mail:    hblaw@hbsb.com
8

9              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEVADA
10

11 HILDA L. SOLIS, Secretary of the United States      CASE NO.: CV-N-01-0698- DAE-VPC
   Department of Labor,
12                                                      ORDER GRANTING MOTION TO
                         Plaintiff,                     DISTRIBUTE PARTIAL FUNDS
13          v.
14 JAMES GRAF; WILLIAM KOKOTT;
   NICHOLAS E. ANGELOS; EMPLOYERS
15 MUTUAL, LLC, et al.,

16                       Defendants.

17        NOW THEREFORE, based on the submissions of the Independent Fiduciary, the

18 pleadings on file and the lack of any objection, the Court hereby FINDS, ADJUDGES AND

19 DECREES as follows:

20 I.      FINDINGS OF FACT

21        1.   The Court makes the findings of fact below based on the evidence submitted in

22 support of the Motion to Distribute Partial Funds ("Motion"), by Thomas A. Dillon as the Class

23 Representative of the Class of Individuals and as the court-appointed Independent Fiduciary and

24 Receiver ("Independent Fiduciary") in this action. [1]  That evidence includes the Independent

25

26 _____

27 [1] In addition to serving as the Independent Fiduciary and Receiver, Dillon was appointed to
   represent the "Class of Individuals", which encompasses all persons who purchased the alleged
28 insurance outside of an ERISA governed employment relationship (see Dillon Decl. ¶ 29 and
   Docket # 209).

Fiduciary's accounting of his appropriately incurred costs, as well as his sworn estimates of his appropriate future expenses (including fees payable to him) for winding up the quasi-bankruptcy proceeding ordered in this action.  See Dkt # 73 (quasi-bankruptcy order).  In the record citations below, "Dillon Decl." refers to the declaration of Thomas A. Dillon filed in support of the Motion.  The Dillon Declaration in turn includes the Independent Fiduciary's sworn accounting of the quasi-bankruptcy estate's ("Estate," created by order at Dkt # 73) assets and expenses.

2.   In his Motion, the Independent Fiduciary moves the Court to approve his proposed distribution of part of the total distribution eventually due the Class of Individuals and the Estate's Category A Creditors and Category B Creditors, which are defined at Dkt #73 ¶¶ 5 and 6.  For distribution purposes, members of the Class of Individuals are to be treated equally with Category A and B Creditors (see Dillon Decl. ¶ 29 and Docket # 209), and references in this Order to Category A and B Creditors shall encompass the Class of Individuals.

3.   The proposed plan of distribution limits distributions to Administrative and Category A & B Creditors.  It does not include any distributions to Categories C or D Creditors because: (i) no Category C or D creditors have submitted claims; (ii) the Independent Fiduciary has not identified any Category C Creditors; and (iii) the combined claims of Category A & B Creditors far exceed available funds.  Further, under the Quasi-Bankruptcy Order (Dkt #284 ¶ 6.4.a through ¶ 6.4.e), Category D Creditors can receive a distribution only if Category C Creditors have been paid 100% of their allowed claims.

4.   The Independent Fiduciary holds a Gross Distributable Amount (defined by order at Dkt # 284 § 6.1.d) of $13,453,961.95.  This $13,453,961.95 figure is the sum of the following assets held by and expenses incurred by the Independent Fiduciary:

| | |
|---|---|
| Net Malpractice Action Recovery | $ 11,500,069.00 |
| Premium Deposits | 1,784,518.24 |
| Interest Earned | 1,131,519.69 |
| Forfeiture Restoration Proceeds | 2,143,466.95 |
| Expenses Incurred or Paid as of May 31, 2011 | (3,105,611.93) |

Gross Distributable Amount          <u>$13,453,961.95</u>

See Dillon Decl. ¶¶ 68-91.  This Court's order, Dkt # 284 ¶ 6.1.c (modifying quasi-bankruptcy order, Dkt # 73), explains the origin of the Forfeiture Restoration Proceeds.

5.   Prior to May 31, 2011, the Independent Fiduciary incurred or paid expenses totaling $3,105,611.93 which were owed to the Estate's Administrative Creditors defined at Dkt # 73 ¶ 5.a.  Dillon Decl. ¶ 77 (total), ¶¶ 68-77 (itemized).  In part of his Motion, the Independent Fiduciary moves the Court to approve this $3,105,911.93 expense figure and its constituent line items.

a.   This $3,105,911.93 expense figure contains the Independent Fiduciary's $555,000 estimate of his hourly fees incurred through May 31, 2011, as authorized in this Court's order that appointed him (Dkt # 30 ¶ 12, specifying his fee of $150 per hour).

b.   This $3,105,911.93 expense figure does not include, however, the Independent Fiduciary's completed payment of his attorneys' fees and litigation costs in <u>Dillon v. Graf, et al.</u>, No. CV-N-03-0119 (D. Nev.) (the "Malpractice Action").  Court Orders entered in the Malpractice Action separately authorized these payments.

6.   In his declaration in support of his Motion, the Independent Fiduciary estimates that – out of the Gross Distributable Amount of $13,453,961.95  – he needs to reserve $1,725,602.54 to pay his estimated post-May 31, 2011 expenses which are being incurred or will be incurred in the process of distributing all remaining Estate assets, winding up the Estate, and obtaining his discharge from his judicial appointment as Independent Fiduciary.  Dillon Decl. ¶ 90, detailed in ¶¶ 78-90.

7.   The Independent Fiduciary also estimates that he similarly must reserve $5,582,196.92 for unresolved potential income tax liabilities of the Estate and the receivership. Dillon Decl. ¶ 89.

8.   Based on his foregoing figures, the Independent Fiduciary's Motion asks for authority to distribute $6,146,162.49 to the Estate's Category A Creditors and Category B Creditors, as summarized below:

| | |
|---|---|
| Gross Distributable Amount | $13,453,961.95 |
| Minus Reserve for Post-May 31, 2011 Expenses | (1,725,602.54) |
| Minus Reserve for Taxes | (5,582,196.92) |
| Proposed Partial Distribution to Category A & Category B Creditors | $ 6,146,162.49 |

9.   This $ 6,146,162.49 proposed partial distribution includes the $2,143,466.95 in Forfeiture Restoration Proceeds (see Dkt # 284 ¶ 6.1.c) held by the Independent Fiduciary.

## II.   ORDER

Based on the Independent Fiduciary's Motion, the foregoing findings of fact, and on the absence of opposition from the remaining parties to this action, the Court grants the Independent Fiduciary's Motion to Distribute Partial Funds to following extent:

Expenses Incurred and Estimated Future Expenses

1.   Within the Independent Fiduciary's expenses of $3,105,611.93 incurred as of May 31, 2011, the Court approves the Independent Fiduciary's previous expense payments  of $2,550,611.93, which is the sum of his following expense payments itemized in ¶¶ 68-77 of his declaration in support of his Motion:

| | |
|---|---|
| Travel, Meals, & Office Expenses | $    99,128.33 |
| Claims Administration | 2,083,070.20 |
| Attorneys Fees | 125,989.69 |
| Mailing | 171,077.16 |
| Accounting | 46,795.00 |
| Bank Fees | 24,851.55 |
| Total Fees Incurred or Paid | $2,550,611.93 |

As to the remainder of the $3,105,611.93 figure above –  the Independent Fiduciary's estimated incurred hourly fees of $555,000 – the Court authorizes the Independent Fiduciary to reserve

$555,000 from the Estate's current assets.  The Independent Fiduciary may pay all or part of his accrued hourly fees to the extent that he files and the Court approves each of his periodic financial reports showing the accrual of his requested hourly fee payments.  See Dkt # 30 ¶¶ 12-13.

     2.   With respect to additional expenses paid after May 31, 2011, and estimated expenses to be incurred in the future as the matter winds down (itemized at Dillon Decl. ¶¶ 78-90, including his own hourly fees), the Independent Fiduciary may reserve from Estate assets the $1,725,602.54 that he has estimated will be necessary to pay the Estate's and the receivership's non-tax administrative expenses through the windup of the Estate and the receivership.   The Independent Fiduciary's payment of these expenses estimated to total $1,725,602.54 is hereby approved.  By amount and category, these approved non-tax administrative expenses are:

| | |
|---|---:|
| Hollister & Brace, fees incurred prior to October 31, 2011 | $   96,680.00 |
| Hollister & Brace, expenses incurred prior to October 31, 2011 | 18,622.54 |
| Hollister & Brace, estimated fees and costs incurred or to be incurred after October 31, 2011 | 118,000.00 |
| Independent Fiduciary – estimated future hourly fees | 170,000.00 |
| Independent Fiduciary - estimated future expenses | 10,000.00 |
| Estimated Future Claims Processing Expense | 194,800.00 |
| Estimated Future Legal Fees (other than Hollister & Brace) | 127,000.00 |
| Estimated Future Accounting Fees | 150,000.00 |
| Estimated Future Office Expenses - Independent Fiduciary | 15,000.00 |
| Estimated Distribution Costs (e.g., printing, mailing) | 825,000.00 |

| Estimated Future Bank Fees | 500.00 |
| --- | --- |
| TOTAL | $1,725,602.54 |

3.   The Independent Fiduciary also may reserve from current Estate assets the $5,582,196.92  that the Independent Fiduciary estimated for the Estate's and the receivership's potential tax liabilities.  See ¶ I.5 above.

<u>Partial Benefits Distribution to Category A Creditors and Category B Creditors</u>

4.   The Court approves the Independent Fiduciary's determination of the benefits amount due each Category A Creditor and each Category B Creditor (together, all benefits claimants) set forth in Exhibit 7 to the Motion.  The Court incorporates Exhibit 7 into this order.

5.   The Court authorizes distribution of $6,146,162.49 (the "Partial Benefits Distribution") to creditors in Categories A and B, as set forth immediately below.  As noted in § I.7 above, this authorized distribution includes the Estate's Forfeiture Restoration Proceeds of $2,143,466.95, which, under Dkt # 284 ¶ 6.2.a and 2.b, can be distributed only to creditors in Categories A and B.

a.   In calculating the requested Partial Benefits Distribution to Category A Creditors and to Category B Creditors, the Independent Fiduciary shall follow the accounting steps previously ordered in Dkt # 284 ¶¶ 6.2 – 6.4.

b.   The Independent Fiduciary shall maintain accounting records of the fraction, within each distribution payment to a creditor in Category A or B, attributable to the Forfeiture Restoration Proceeds.

c.   The Independent Fiduciary shall distribute the Forfeiture Restoration Proceeds ($2,143,466.95) to all creditors in Categories A and B pro rata according their approved claims amounts listed in Exhibit 7 to the Dillon Declaration.

6.   Under the Civil Asset Forfeiture Reform Act ("CAFRA"), the Forfeiture Restoration Proceeds are asset forfeiture proceeds to be distributed "as restoration to any victim of the offense giving rise to the forfeiture."  18 U.S.C. § 981(e)(6).  The United States Attorney General granted this restoration under his restoration authority in 18 U.S.C. § 981(e).  <u>See</u> Dkt #

1   351 (restoration orders attached to statement of Dept. of Labor), Dkt # 355 (minute order noting

2   Court's receipt of restoration proceeds of $2,114,037), Dkt # 359 (order for court clerk to

3   disburse $2,114,037 proceeds plus interest to the Independent Fiduciary).  See also Dkt #284

4   ¶ 6.1.c (definition of Restoration Proceeds).

5           7.  By regulation, the Attorney General provides that, in the case of a forfeiture

6   restoration to a class of victims, restoration (or remission) shall generally be pro rata according

7   to each victim's pecuniary loss:

8                   (e) Pro rata basis.  In granting remission to multiple victims

9                   pursuant to this section, the Ruling Official should generally grant

10                  remission on a pro rata basis to recognized victims when petitions

11                  cannot be granted in full due to the limited value of the forfeited

12                  property.

13  28 C.F.R. § 9.8(e).[2]

14          8.   The Court therefore modifies ¶ 6.3 of its earlier order at Dkt # 284 (which had

15  modified parts of ¶ 6 in the quasi-bankruptcy order, Dkt #73) to follow § 9.8(e) of the above-

16  cited regulation.  The Court deletes ¶ 6.3 from Dkt # 284 and replaces that deletion with this

17  text:

18                  6.3.  The Independent Fiduciary shall distribute the

19                  Restoration Proceeds to all Category A Creditors and Category B

20                  Creditors pro rata according to the amounts of their claims

21                  determined by the Independent Fiduciary in Exhibit 7 to the Dillon

22                  Declaration, which claims amounts the Court approves in ¶ II.4 of

23                  this order.  Insofar as Dkt #284 ¶ 6.3 created an absolute priority

24                  rule concerning distribution of Forfeiture Restoration Proceeds to

25

26  _____

27          [2]  Factors not shown in this case but set forth in the regulation may allow variation from
    the pro rata rule:  reliability of evidence of loss, extreme financial hardship for a particular
28  victim, and a victim's cooperation with a government investigation.  See 28 C.F.R.
    §§ 9.8(e)(1)-(4).

Category A Creditors and Category B Creditors, such an absolute

priority rule cannot apply to such distribution.

9.   After subtracting the above-described $2,143,466.95 in Forfeiture Restoration Proceeds from the proposed  $6,146,162.49 Partial Benefits Distribution, the balance remaining is $4,002.695.54  The Independent Fiduciary shall distribute this $4,002.695.54  to all Category A and Category B Creditors in accordance with Dkt # 284 ¶ 6.4.

10.   If, as to a Category A Creditor or a Category B Creditor, the Independent Fiduciary issues a distribution check and that check is returned to the Independent Fiduciary undelivered, then the Independent Fiduciary shall take as many of the following two steps as necessary to identify a current address for such creditor:

a.   use the letter-forwarding service of either (but not both) the Internal Revenue Service or the Social Security Administration, and

b.   use a commercial locator service.

11.   If, for a Category A Creditor or Category B Creditor, the Independent Fiduciary locates a current address through ¶10.a or ¶ 10.b above, he need not resort further to the other of those two methods.  In addition, the Independent Fiduciary need not follow  ¶¶ 10.a – 10.b if he obtains a current address at reasonable cost through an alternative means.

12.   For any Category A Creditor or Category B Creditor for whom the steps in sections 10 and 11 above do not yield a current address, the Independent Fiduciary may weigh further potential costs for search and mailing against that creditor's total potential distribution from the Estate.

13.   As to any Category A Creditor or Category B Creditor as to whom (1) the Independent Fiduciary has complied once with ¶¶ 10.a – 10.b above and (2) reasonable further costs for search and mailing <u>would exceed</u> the Estate's total potential distribution to the creditor, the Independent Fiduciary will have satisfied his fiduciary responsibility to search for a current address.

14.   For any Category A or Category B creditor as to whom the Independent Fiduciary has complied once with ¶¶ 10.a – 10.b above but reasonable further costs for search and mailing <u>would be less than</u> the Estate's total potential distribution to that creditor, the Independent

Fiduciary will have met his fiduciary responsibility to search for a current address if he completes one additional search using any reasonably efficacious and cost-effective means.

15.   The Independent Fiduciary will have completed his entire obligation to search for a creditor's current address for this Partial Benefits Distribution if:

a.   for a distribution check returned as undeliverable, the Independent Fiduciary has complied with ¶¶ 10 through 14 above without obtaining a current address for the creditor; or

b.   if, within six months after its date of issue, a distribution check mailed by the Independent Fiduciary has not returned to either the Independent Fiduciary or such drawee bank.

16.   For a distribution check that is returned undelivered, is drawn on a bank account that holds Forfeiture Restoration Proceeds, and as to which ¶¶ 10-15 above apply, the Independent Fiduciary shall return the Forfeiture Restoration Proceeds funds underlying that check to the applicable asset forfeiture fund maintained by the U.S. Department of the Treasury or other applicable federal agency.  The Independent Fiduciary shall do likewise with the Forfeiture Restoration Proceeds funds underlying any distribution check (drawn on a bank account that holds Forfeiture Restoration Proceeds) that, after mailing by the Independent Fiduciary and within six months after its date of issue, has not returned either to the Independent Fiduciary or to the drawee bank.

17.   For Estate distribution funds not attributable to Forfeiture Restoration Proceeds, the Independent Fiduciary may transfer those Estate funds to the unclaimed property fund of the state applicable to the creditor where:

a.   the Independent Fiduciary has complied with ¶¶ 10-15 above and either

(1)   has not obtained the creditor's current address or

(2)   has mailed a returned distribution check to a second address for the creditor and had it returned as undeliverable a second time; or

b.   within six months after its date of issue, a distribution check mailed by the Independent Fiduciary has not returned either to the Independent Fiduciary or to the drawee bank.

1  Such a transfer to a state unclaimed property fund shall complete the Estate's distribution to the

2  applicable creditor of the Estate funds underlying that check.  If in such instances the

3  Independent Fiduciary determines that a creditor either has died or (if the creditor is a business)

4  has gone out of business, the Independent Fiduciary may pay that creditor's distribution amount

5  to either the applicable state's unclaimed property fund or to the creditor's current successor in

6  interest.

7       18.   As soon as practicable after he has resolved the Estate's and the receivership's

8  outstanding income tax issues, the Independent Fiduciary shall move the Court for approval to

9  distribute all remaining Estate and receivership assets, wind up the Estate and his receivership,

10  and discharge him from his judicial appointment as Independent Fiduciary and Receiver in this

11  action.  See Dkt #30 ¶¶ 12-13 (preliminary injunction order sections governing the Independent

12  Fiduciary).

13       19.   In all respects not specifically granted above, the Court denies the Motion.  The

14  Court shall retain continuing jurisdiction over this matter for the purpose of administering and

15  winding up the quasi-bankruptcy proceeding ordered in Dkt # 73 in this action.

16  **IT IS SO ORDERED.**

17  Signed this 20th day of November, 2012.

                                   _____

                                   David A. Ezra
                                   United States District Judge